UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10477-RWZ

NICHOLAS SCARAFONE

v.

CAROLYN W. COLVIN

MEMORANDUM OF DECISION

January 6, 2015

ZOBEL, D.J.

Plaintiff Nicholas Scarafone files this appeal under 42 U.S.C. § 405(g) seeking to reverse the decision of defendant, Acting Commissioner of Social Security Carolyn W. Colvin ("the Commissioner"), rejecting his application for Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. § 1383(c)(3) ("the Act").

Plaintiff claims that the Commissioner's denial of benefits was not supported by substantial evidence, citing three alleged errors: (1) the Commissioner's finding that his degenerative disc disease did not meet an entry in the Listing of Impairments was too conclusory; (2) the commissioner's finding that he could perform light work with certain restrictions is inconsistent with her finding that he needed a job where he could alternate between sitting and standing every 30 minutes; and (3) the vocational expert ("VE") misinterpreted what constitutes transferable skills and when they are relevant to other occupations. Plaintiff seeks reversal of the Commissioner's final decision on the

basis of these three errors.

**I. Background**

    **A. Applicable Statutes and Regulations**

Under section 1383(c)(3) of the Act, a claimant seeking SSI must prove that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To meet this definition, a person must have a severe impairment that renders him unable to do his past relevant work or any other substantial gainful work that exists in the economy. 20 C.F.R. § 416.905(a).

The ALJ employs a five-step sequential evaluation process to assess a claim for SSI. See 20 C.F.R. §§ 404.1520(a)(4)(I)-(v). The evaluation may be concluded at any step in the process if it is determined that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). In order, the ALJ must determine: (1) whether the claimant is engaging in substantial gainful work activity; if not, (2) whether the claimant has a severe medical impairment that meets the duration requirement; if so, (3) whether the impairment meets or equals an entry in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, and meets the duration requirement; if not, (4) whether the claimant's residual functional capacity ("RFC") is sufficient to allow him to perform her past relevant work; and, if not, (5) whether in light of the claimant's RFC, age, education, and work experience, he can make an adjustment to other work. Id. § 404.1520(a)(4)(I)-(v).

A claimant's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). RFC is "the most [a claimant] can still do despite [his] limitations." Id. A claimant can adjust to other work if he can do any jobs that "exist in significant numbers in the national economy (either in the region where [he] live[s] or in several regions in the country)." Id. § 404.1560(c)(1).

The claimant bears the burden of proof on steps one through four, id. § 404.1520; the Social Security Administration ("SSA") bears the burden of proof on step five. Id. § 404.1560(c)(2); see Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

### B. Procedural History

Plaintiff filed an application for SSI benefits on November 12, 2009, alleging disability as of January 1, 2006. (Tr. 161). The SSA denied his application on May 3, 2010. Plaintiff filed a timely Request for Reconsideration on October 6, 2010, and on October 19 filed a Request for a Hearing before an ALJ. The requested hearing was held on July 6, 2011, and plaintiff's appeal was denied on July 15, 2011. Plaintiff then timely appealed that decision with the SSA's Appeal Council on August 22, 2011. That appeal was denied by decision dated December 28, 2012. Plaintiff subsequently instituted this civil action pursuant to 42 U.S.C. § 405(g), seeking reversal of the SSA's final determination.

### C. Evidence at the Hearing before the ALJ

At the December 29, 2010, administrative hearing, the ALJ heard testimony from plaintiff and a vocational expert.

3

### 1. Plaintiff's Personal and Medical History

Plaintiff Nicholas Scarafone was born in Boston, Massachusetts, in 1957 and for all relevant periods resided in Revere, Massachusetts. He holds a GED, and has previously worked as a restaurant manager, ice cream sales person, taxi driver, and tire technician. Plaintiff alleges he suffers from back pain, leg numbness, arm numbness and pain, and foot pain.

Plaintiff testified that he was 54 years old on the date of the hearing, and he lived with his wife and his paraplegic, wheelchair-bound son. Tr. 29-30. His son received 32 hours of care per week from a personal care attendant; the rest of the time plaintiff and his wife cared for him. Tr. 31. Plaintiff last worked in 2006, when he managed a pizza restaurant. Tr. 38-40. He also assisted his father with the management and winding down of a family business up to approximately three years before the hearing. Tr. 40-42.

Plaintiff stated that he had sharp, shooting pain in the middle-center of his back that went through the tailbone into the left leg, and that he had numbness in his left leg above the knee. Tr. 54, 68-69. He had been using a cane for two and a half years, but it had not been prescribed by a doctor. Tr. 54. Though his back pain had been evaluated at Boston Medical Center, he had received no treatment and was taking no medications at the time of the hearing. Tr. 55-56. Plaintiff also described pain, weakness, and numbness in his left shoulder and upper arm area. Tr. 57. The pain was made worse by prolonged standing without support, walking long distances, and bending to lift objects over 10 to 15 pounds, and it was alleviated only during sleep.

Tr. 62.

On a typical day, plaintiff woke up around 7:00 a.m. and helped get his son ready with his wife's assistance. Tr. 60. He did some housework and fixed some meals and went to bed between 9:00 and 11:00 p.m., though he never slept through the night due to pain. Tr. 60-62.

Notably absent from plaintiff's evidence were any medical records or testimony from his treating physicians.

### 2. Opinions of State Agency Physicians

On April 26, 2010, plaintiff was examined by Doctor Roger Komer. Tr. 420-423. Dr. Komer found plaintiff had "[c]hronic low back pain . . . [o]ccasionally . . . radiat[ing] to the left thigh." Tr. 422. Plaintiff's "MRI show[ed] lumbar spondylosis with disc disease at the level of L4-L5," and his "movement of the lumbrosacral spine show[ed] moderate limitation." Id.

On April 29, 2010, John Jao, M.D., reviewed the record and issued an opinion on plaintiff's physical RFC for the state agency. Tr. 424-31. He found that plaintiff could frequently lift 10 pounds; occasionally lift 20 pounds; occasionally climb, balance, stoop, kneel, crouch, and crawl; and sit, stand, and/or walk for about six hours each in an eight-hour workday. Tr. 425. Dr. Jao also found that plaintiff's then-recent lumbar MRI showed no significant central canal stenosis. Tr. 426. A state agency medical consultant affirmed Dr. Jao's opinion after review of the record on October 3, 2010. Tr. 453.

### 3. Vocational Expert

5

The VE, Lawrence Take, described plaintiff's work history and vocational background. Plaintiff had held a number of management positions in the food industry, all classified as skilled jobs. Tr. 78. The VE testified that plaintiff had acquired transferable skills from his management jobs in the form of "documentation skills, supervision skills, training, and dealing with the general public, customer service skills, using eyes, hands, and feet or eyes and hands in coordination, and working within accuracies within specific limitations [sic]" as well as "money-handling skills." Tr. 79-80. The VE responded to a series of hypothetical questions posed by the ALJ, including hypotheticals involving workers with the limitations eventually found by the ALJ. The VE testified that a hypothetical worker with the limitations imposed could perform the skilled job of cashier checker, DOT code 211.462-014, with 77,000 such positions available in Massachusetts and over 3,400,000 available in the national economy. The VE further testified that a hypothetical individual with those limitations could also perform unskilled light jobs in small product assembly, DOT code 706.684-022, or as a ticket seller, DOT code 211.467-030, with 2,000 and 77,000 such jobs in Massachusetts respectively. Tr. 82-83.

**D. The ALJ's Decision**

Working through the five-step analysis, the ALJ first found that Mr. Scarafone has not engaged in substantial gainful activity since the date of his SSI application. Tr. 14. Next, the ALJ found that plaintiff has degenerative disc disease, a severe impairment under 20 C.F.R. 416.920(c). Third, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the

6

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). Fourth, the ALJ considered the entire record and concluded that plaintiff has the RFC to perform "light work" under 20 C.F.R. 416.967(b), with the exceptions that he is able to "climb, balance, stoop, kneel, crouch, crawl" but never able to "climb ropes, ladders or scaffolds," and requires a "sit/stand option with changes every half hour." Tr. 14. The ALJ concluded that plaintiff is unable to perform any past relevant work because the demands of his prior work exceed his RFC.

The ALJ then went through step five of the five-step analysis mandated by 404.1520(a)(4)(I)-(v), finding that plaintiff was an individual closely approaching advanced age on the date of filing, has the equivalent of a highschool education and can speak English, and has acquired skills from his prior relevant work in the form of "hand/eye coordination . . . accuracy standards, customer service, document skills, supervisory skills, training skills and money handling skills." Tr. 17. Considering these factors, the ALJ concluded that Mr. Scarafone is capable of performing occupations with jobs existing in significant numbers in the national economy, and he is therefore not disabled under the Act.

## II. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence and based on the correct legal standard. 42 U.S.C. § 405(g); Seavey, 276 F.3d at 9. Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion." Id. The court must uphold the

7

Commissioner's determination "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).  However, a denial of benefits will not be upheld if the decision was "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 173 F.3d 31 (1st Cir. 1999); see Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

In determining the requisite quantity and quality of the evidence, the court will examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision.  Rohrberg v. Apfel, 26 F. Supp. 2d 303, 306 (D. Mass. 1998).

## III. Discussion

### A. The ALJ's Step-Three Finding is Supported by Substantial Evidence

Mr. Scarafone does not allege that his degenerative disease meets any listed criteria, but instead simply argues that the ALJ's determination was improperly conclusory and not supported by substantial evidence.  Plaintiff relies heavily on Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000), and other cases of insufficient step-three analysis to this end.  However, the determination here is unlike Burnett and the other cases plaintiff cites where the ALJ's determination was "beyond meaningful judicial review."  Id.  Whereas the ALJ in

Burnett simply stated that the impairment did not meet the criteria and moved on,[1] here the ALJ specifically cited the evidence she had considered in making her determination.[2] Because the ALJ relied on substantial evidence in the form of the state agency medical consultant's opinions, and because plaintiff fails to identify any listing that he meets or any medical evidence that the ALJ failed to consider, the step-three analysis is not deficient and not subject to reversal on review by this court.

**B. Capacity for Light Work is Not Incompatible With Rest Requirement**

Plaintiff argues the ALJ's determination of an RFC for light work was inconsistent with the sit/stand requirement also imposed, citing SSR 83-10, 1983 WL 31251 at *6. On the contrary, the ALJ's finding is specifically contemplated by SSR 83-12: "[in] some disability claims, the medical facts lead to an assessment of RFC which [is] compatible with the performance of . . . light work except that the person must alternate periods of sitting and standing." SSR 83-12; see Aho v. Comm'r of Soc. Sec. Admin., 2011 WL 3511518, at *11 (D. Mass. Aug. 10, 2011).

Though this limitation may prevent employment in most light and sedentary capacities, "[t]here are some jobs in the national economy . . . in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would be

---

[1] "Although [plaintiff] has established she suffers from a [severe impairment], said impairment failed to equal the level of severity of any disabling condition [contained in the regulations]." Burnett, 220 F.3d at 119.

[2] "In reaching this conclusion, I have considered the opinions of the state agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." Tr. 14.

found not disabled." SSR 83-12. In these interstitial cases, SSR 83-12 requires only that the ALJ consult a VE "to clarify the implications for [the plaintiff's] occupational base," Id., and the ALJ did so.

The ALJ's ruling was thus entirely consistent with the VE's testimony, SSR 83-12, and internally.

### C. The Vocational Expert's Testimony Regarding Transferable Skills

Plaintiff objects that the transferability of what the VE termed skills was not relevant to the ALJ's ultimate finding. "Transferability will be decisive in the conclusion of 'disabled' or 'not disabled' in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work." SSR 82-41. The VE here specifically found that, accounting for plaintiff's specific profile, he could perform the unskilled jobs of "small product assembly (DOT # 706.684-022) and "ticket seller" (DOT # 211.467-030), jobs that "do not require skills acquired in the claimant's past relevant work." Tr. 17. Any alleged error by the VE in determining transferable skills was thus at most harmless error.[3]

## IV. Conclusion

Defendant's Motion to Affirm the Commissioner's Decision (Docket # 18) is ALLOWED and Plaintiff's Motion to Reverse the Commissioner's Decision (Docket # 14) is DENIED.

---

[3] In any event, the VE's finding of "money-handling skills" is indisputably a "skill," and supportably one plaintiff acquired as a manager of a pizza restaurant. Tr. 39, 80. He thus had some transferable skills to the cashier job, as testified to by the VE. Tr. 80, 82-83.

10

Judgment may be entered affirming the decision of the Commissioner.

|  |  |
|---|---|
|    January 6, 2015    |    /s/Rya W. Zobel    |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |